CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
12/28/2018
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

ROBERT AULL,

    Plaintiff,

v.

FMS INC.,

    Defendant.

Case No.: 3:18-cv-00120

## PLAINTIFF'S COMPLAINT

Plaintiff, ROBERT AULL ("Plaintiff"), by and through his attorneys, alleges the following against Defendant, FMS INC. ("Defendant"):

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

2. Count II of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

### JURISDICTION AND VENUE

3. This court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. § 1692k (FDCPA).

4. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

5. This court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

**PARTIES**

7. Plaintiff is a natural person residing in the Town of Culpeper, Culpeper County, Commonwealth of Virginia.

8. Plaintiff is a consumer as that term is defined by the FDCPA.

9. Plaintiff allegedly owes a debt as that term is defined by the FDCPA.

10. Defendant is a debt collector as that term is defined by the FDCPA.

11. Within the last year, Defendant attempted to collect a consumer debt from Plaintiff.

12. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

13. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

14. Defendant is an Oklahoma business corporation and debt collection agency based in the City of Tulsa, Tulsa County, State of Oklahoma.

15. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

16. When an unpaid, outstanding account is placed with Defendant it is assigned a file number.

17. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

18. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

19. During the course of its attempts to collect debts allegedly owed to third parties, Defendant

sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

20. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

21. Defendant is attempting to collect a consumer debt allegedly owed by Plaintiff.

22. The alleged debt owed arises from transactions for personal, family, and household purposes.

23. In or around April 2018, Defendant began calling Plaintiff's cellular telephone at 540-522-0881 in an attempt to collect an alleged debt.

24. Defendant calls Plaintiff's cellular telephone from at least, 855-801-1232, which is one of the Defendant's telephone numbers.

25. In or around April 2018, Plaintiff answered several calls placed by Defendant to Plaintiff.

26. During the aforementioned calls, Plaintiff told Defendant to stop calling him.

27. Despite Plaintiff's requests that Defendant stop calling Plaintiff, Defendant continued to call Plaintiff's cellular telephone unabated.

28. Defendant calls Plaintiff at an annoying and harassing rate.

29. None of the calls Defendant made to Plaintiff were for an emergency purpose.

30. All of the calls Defendants made to Plaintiff's telephones resulted in Plaintiff incurring a charge for incoming calls.

31. During at least one conversation, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's telephones.

32. Plaintiff has never given to Defendant prior express consent to contact Plaintiff as described herein.

33. Even if at one point Defendant had prior express consent to call Plaintiff's cellular telephone, Plaintiff revoked this consent as described above.

34. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

35. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

36. When Plaintiff answered Defendant's calls, he was sometimes greeted with a message given by an artificial or pre-recorded voice.

37. When Plaintiff answered Defendant's calls, he was sometimes greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to collect an alleged debt.

38. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

39. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

40. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

41. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

42. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the

capacity to call telephone numbers randomly.

43. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

44. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple recipients.

45. The dead air that the Plaintiff may have experienced on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's telephones would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

46. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

    a. Invading Plaintiff's privacy;
    b. Electronically intruding upon Plaintiff's seclusion;

c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
  d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone; and
  a. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

# COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

47. Defendant violated the FDCPA based on the following:

   a. Defendant violated § 1692d of the FDCPA by engaging in conduct that the natural consequence of which was to harass, oppress, and abuse Plaintiff in connection with the collection of an alleged debt when Defendant inundated Plaintiff with a barrage of collection calls then continued to place collection calls to Plaintiff after Plaintiff requested Defendant stop calling him;

   b. Defendant violated § 1692d(5) of the FDCPA by causing the telephone to ring repeatedly or continuously with intent to annoy, abuse, or harass any person when Defendant inundated Plaintiff with a barrage of collection calls then continued to place collection calls to Plaintiff after Plaintiff requested Defendant stop calling him;

   c. Defendant further violated § 1692e of the FDCPA by its use of any false, deceptive, or misleading representation or means in connection with the collection of any debt when Defendant created the false impression on Plaintiff that Defendant was permitted to call Plaintiff with impunity despite requests by Plaintiff and his attorney for Defendant to stop calling Plaintiff;

   d. Defendant violated § 1692e(10) of the FDCPA by using any false representation or deceptive means to collect or attempt to collect any debt when Defendant created the false impression on Plaintiff that Defendant was permitted to call Plaintiff with

6

impunity despite requests by Plaintiff and his attorney for Defendant to stop calling Plaintiff;

e. Defendant violated § 1692g(b) of the FDCPA by engaging in collection activities and communication that overshadowed or was inconsistent with the disclosure of the consumer's right to dispute the debt when Defendant continued to relentlessly pursue Plaintiff in an attempt to collect the alleged debt after Plaintiff requested that Defendant stop calling him; and

f. Defendant violated § 1692f of the FDCPA by its use of unfair or unconscionable means to collect or attempt to collect any debt, when Defendant engaged in all of the foregoing misconduct.

WHEREFORE, Plaintiff, ROBERT AULL, respectfully requests judgment be entered against Defendant, FMS INC., for the following:

48. Statutory damages of $1,000.00 pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k;

49. Costs and reasonable attorneys' fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k; and

50. Any other relief that this Honorable Court deems appropriate.

## COUNT II:
**DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT**

51. Defendant's conduct violated the TCPA by:

    a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, ROBERT AULL, respectfully requests judgment be entered against Defendant, FMS INC. for the following:

52. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

53. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

54. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

55. Any other relief that this Honorable Court deems appropriate.

DATED: December 28, 2018

RESPECTFULLY SUBMITTED,

By: /s/ Richard W. Ferris
Richard W. Ferris, Esq.
Virginia bar number 31812
Ferris Winder, PLLC
530 East Main St. Suite 300
Richmond, VA 23219
Phone: (804) 767-1800
Fax: (888) 251-6228
rwferris@ferriswinder.com
Attorney for Plaintiff, ROBERT AULL